Rivera Martínez, Juez Ponente
*849 TEXTO COMPLETO DE LA SENTENCIA
El 21 de enero de 2003, la Autoridad de Energía Eléctrica de Puerto Rico presentó un recurso de certiorari solicitando la revisión de la sentencia dictada por el Tribunal de Primera Instancia, Sala de San Juan (en adelante TPI), el 12 de diciembre de 2002 y notificada el 19 de diciembre de 2002, declarando sin lugar la petición de impugnación del laudo de arbitraje obrero-patronal dictada por la árbitro Lillian M. Aulet Berrios del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, en el caso de Autoridad de Energía Eléctrica de Puerto Rico v. Unión de Trabajadores de la Industria Eléctrica y Riego.
Con el beneficio de la comparecencia de la unión recurrida, procedemos a confirmar la sentencia.
I
La Autoridad de Energía Eléctrica de Puerto Rico (en adelante la peticionaria), es una corporación pública que se dedica a la conservación, desarrollo y utilización de las fuentes fluviales y de energía con el propósito de proveer a los habitantes del Estado Libre Asociado de Puerto Rico fuentes de energía en la forma más económica posible e impulsar de esta forma el bienestar general y el comercio en Puerto Rico. Entre las uniones que se encuentran representando a un sector de los empleados de la peticionaria, está la Unión de Trabajadores de la Industria Eléctrica y Riego (en adelante UTIER).
A la fecha de los hechos que motivaron el presente caso, la UTIER había negociado un convenio colectivo con la peticionaria con vigencia del 12 de noviembre de 1999 al 14 de mayo de 2005, el cual regula las relaciones entre las partes.
La peticionaria publicó una convocatoria para una sustitución temporera en la Plaza del Trabajador General Especial de Edificios y Terrenos con fecha de vencimiento de 9 de junio de 2000. Dentro de la sección de oficinas a la cual pertenece esta plaza, no hubo empleados interesados en la sustitución temporera. No obstante, en la sección de servicios de campos, dos empleados mostraron interés en ocupar la misma. Estos fueron Diego Beltrán, quien ocupaba la plaza de podador y el Sr. Félix Rosario, quien ocupaba la plaza de ayudante de garaje.
*850 La peticionaria seleccionó al Sr. Diego Beltrán para realizar la sustitución temporera. La UTIER, inconforme con esta determinación, presentó a nombre del Sr. Félix Rosario una querella, conforme a lo dispuesto en el Artículo XXXIX de procedimiento para la resolución de querellas del convenio colectivo, el cual dispone el arbitraje obrero patronal.
Las partes no lograron ponerse de acuerdo sobre la controversia a ser resuelta por el árbitro, por lo que ambas partes sometieron sus respectivos proyectos de sumisión:

“Sumisión del Patrono

Que la Honorable Arbitro determine, de conformidad con el Convenio Colectivo vigente y la evidencia presentada, si la Autoridad violó o no el Artículo VI, Sección 16, al otorgarle una sustitución temporera al empleado Diego Beltrán, ya que el querellante, Félix Rosario, no pertenece a la sección donde se iba a realizar la misma y sus servicios eran necesarios en su área de trabajo. De determinar que no, proceda a desestimar la querella.

Sumisión de la Unión

Que lá Honorable Arbitro determine, conforme al Convenio Colectivo y la prueba presentada, si la sustitución de la Plaza de Trabajador General Especial de Edificios y Terrenos Núm. 743-9303-001, en la Técnica de San Sebastián, le correspondía o no al querellante. De la Honorable Arbitro determinar que le correspondía dicha sustitución, ordene el pago de salarios dejados de devengar por el período que duró la sustitución, que se considere como experiencia para cualificar para otros puestos y un cese y desista de esta práctica. ”
El Artículo IX, inciso b, del Reglamento del Negociado de Conciliación y Arbitraje dispone que: “en la eventualidad de que las partes no logren un acuerdo de sumisión, dentro de un término razonable, el árbitro determinará el asunto preciso a ser resuelto tomando en consideración el convenio colectivo, las contenciones de las partes y la evidencia admitida. ”
La vista de arbitraje se llevó a cabo el 31 de agosto de 2001 en las facilidades del Negociado de Conciliación y Arbitraje en el Departamento del Trabajo y Recursos Humanos.
Luego del correspondiente análisis del Convenio Colectivo, de las contenciones de las partes y de la prueba desfilada, la árbitro determinó que la controversia a resolver era “determinar de conformidad con el Convenio Colectivo vigente y la evidencia presentada, si la Autoridad violó o no el Artículo VI, Sección 16, al no otorgar una sustitución temporera al querellante. De determinar que le correspondía dicha sustitución, ordene el remedio adecuado”.
Tras sopesar la evidencia sometida por las partes en la vista, analizar las disposiciones aplicables del Convenio Colectivo y realizar las determinaciones de hechos y las conclusiones correspondientes, el 31 de enero de 2002, la Arbitro dictó el siguiente laudo:

“La Autoridad violó el Artículo VI, Sección 16 del Convenio Colectivo vigente. Se ordena el cese y desista de esta práctica y el pago de la doble penalidad por los haberes dejados de percibir, conforme a la Ley 379 del 15 de mayo de 1948, según enmendada. ”

Es de este laudo que se recurre al TPI quien, mediante sentencia de 12 de diciembre de 2002, confirmó el mismo. No conforme con la determinación del TPI, el peticionario recurre a este foro planteando la comisión de los siguientes errores:

*851
“1. Erró el Honorable Tribunal de Primera Instancia al resolver que la actuación de no incluir toda la prueba documental en el anejo que acompañó el Recurso de Impugnación de Laudo no le permitió discernir la veracidad de las alegaciones planteadas.

2. Erró el Honorable Tribunal de Primera Instancia al sostener un laudo de Arbitraje laboral que padece de la causal de nulidad consistente en violación a la política pública. Toda vez que la árbitro modificó y alteró el contrato de trabajo establecido entre las partes, lo que no sólo viola la política pública, sino que al así hacerlo actuó sin jurisdicción.

3. Erró el Honorable Tribunal de Primera Instancia al sostener un laudo de arbitraje laboral que padece de la causal de nulidad consistente en la violación a la política pública. Esto al otorgar como remedio el pago del diferencial de salario, más la doble penalidad en virtud de la Ley 379 del 15 de mayo de 1948, según enmendada, a un empleado por un trabajo que no realizó. ”

II
De una lectura de la sentencia recurrida se desprende que el TPI dispuso del recurso sometido por el peticionario resolviendo que en el mismo no se habían configurado las causales de nulidad que establece el ordenamiento. Ahora bien, es un principio firmemente arraigado en los procedimientos apelativos que la revisión se da contra la parte dispositiva de la sentencia, no contra sus fundamentos. Véanse: Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314 (1997); Piñeiro v. Int’l Air Ser. of P.R., Inc., 140 D.P.R. 343 (1996); Vélez Rodríguez v. Amaro Cora, 138 D.P.R. 182 (1995); Alvarez Figueredo v. González Lamela, 134 D.P.R. 374 (1993); Díaz Martínez v. Policía de P.R., 134 D.P.R. 144 (1993); Toledo Maldonado v. Cartagena Ortiz, 132 D.P.R. 249 (1992); Asoc. Hoteles y Turismo de P.R. v. E.L.A., 131 D.P.R. 814 (1992); García v. Montero Saldaña, 107 D.P.R. 319, 331, (1978); Collado v. E.L.A., 98 D.P.R. 11, 114 (1969); Rodríguez v. Serra, 90 D.P.R. 776, 777 (1964); Alum Torres v. Campos del Toro, 89 D.P.R. 305, 324-325 (1963); Pueblo v. Club Management, Inc., 88 D.P.R. 189, 195 (1963). Por tanto, concluimos que el primer error no fue cometido.
Los errores dos y tres, por estar íntimamente relacionados, los discutiremos en conjunto. Veamos.
Disposiciones del convenio colectivo pertinentes:

“ARTICULO VI

CLASIFICACIONES

SECCION 16

En caso de sustituciones o designaciones de funciones que se estime que se prolongarán por cinco (5) días laborables consecutivos o más, se dará preferencia dentro de la Sección a aquellos empleados regulares que tengan derecho a ascenso a la plaza y se hará una Acción de Personal haciéndolo constar. Estas sustituciones o designaciones de funciones no conllevarán el pago de horas sustituidas que dispone el Artículo XXX de este convenio; tampoco conllevarán el pago de dietas que dispone el Artículo XXXV, excepto cuando la sustitución se haga con trabajadores que tengan dentro de sus deberes plazas para sustituir y mientras estén sustituyendo en dichas plazas o en aquellos casos en que se determine por la Autoridad que el empleado deba trasladarse temporalmente a la zona o sitio donde se realice la sustitución; en estas excepciones, la Autoridad vendrá obligada a rembolsar a dichos trabajadores las dietas a las cuales pudieran tener derecho.

En caso de sustituciones o designaciones de funciones, éstas se harán con trabajadores que estén capacitados para ocupar la plaza.

*852
Artículo XXXIX Procedimiento para la Resolución de Querellas

Sección 12. Procedimiento para la Designación de Arbitro y Vista de Arbitraje

El procedimiento de arbitraje será de acuerdo con el reglamento que a estos efectos tiene el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos.

A. El árbitro será seleccionado mediante el procedimiento de una terna enviada por el Departamento del Trabajo de la cual la Autoridad elimina un candidato, la Unión, otro y se designa al restante.

B. El árbitro tendrá, entre otras cosas, las siguientes facultades:

1. Citará las partes y determinará el sitio, fecha y hora para las vistas.

2. Atenderá y resolverá solicitudes de posposición de vistas.

3. Dirigirá todos los trabajos durante la resolución de los casos que se le planteen.

4. Resolverá cualquier diferencia de criterio con respecto a los términos y la redacción del acuerdo de sumisión.

5. Resolverá todos los planteamientos de índole procesal que surjan en el curso de las vistas.

6. El Comité de Querellas o el árbitro emitirá su decisión tomando en consideración aquellas cláusulas del convenio aplicables a los hechos de la querella que más favorezcan al trabajador.

C. La decisión será conforme al convenio colectivo siendo la misma final e inapelable para las partes y ésta deberá establecer los fundamentos en los cuales se basa la misma.

D. Durante las vistas se utilizarán los servicios de una taquígrafa que será pagada la Autoridad y se le suministrará a la Unión copia de la transcripción.

E. El Comité de Querellas ni el árbitro tendrán la facultad para alterar, modificar, añadir o suprimir disposición alguna de este convenio. ”

De lo anterior se desprende que el convenio colectivo no contiene disposición alguna que imponga que el laudo dictado deba ser conforme a derecho.
La Constitución del Estado Libre Asociado de Puerto Rico reconoce en su artículo II, sección 17, el derecho de los trabajadores de la empresa privada y de aquellas corporaciones públicas que operan como empresas privadas a organizarse y negociar colectivamente con sus patronos. Este convenio colectivo es un contrato que, como tal, tiene fuerza de ley entre las partes suscribientes, siempre que no contravenga las leyes, la moral y el orden público. Además, es un instrumento que promueve la paz y la estabilidad en el ámbito obrero-patronal. Por tal razón, su validez y eficacia debe ser objeto del “más entusiasta endoso” por parte de los tribunales. Junta de Relaciones del Trabajo v. Junta de Administración del Muelle del Municipio de Ponce, 122 D.P.R. 318, 333 (1988); U.I.L. de Ponce v. Destilería Serrallés, Inc., supra, pág. 352.
Las disposiciones contenidas en un convenio colectivo son igualmente vinculantes para las partes firmantes. Es por ello que cuando el acuerdo obrero-patronal así lo establece, las partes deben acudir, en primera instancia, al procedimiento de quejas y agravios que eventualmente culmina en el arbitraje para la resolución de las *853 disputas surgidas de su interpretación o administración. De tal forma, el arbitraje forma parte integrante de la negociación colectiva. Se considera como un medio más apropiado y deseable que los tribunales para resolver las disputas que surgen de la relación contractual entre las partes. Ello, en cuanto es más rápido, menos costoso, más flexible y menos técnico que los procedimientos judiciales. Vélez Miranda v. Servicios Legales de Puerto Rico, Inc., 144 D.P.R. 673 (1998); Pérez v. Autoridad de Fuentes Fluviales, 87 D.P.R. 118, 127 (1963).
Consecuentemente se ha reconocido que al acordar en un convenio colectivo utilizar el arbitraje como mecanismo de ajuste de controversias, se crea un foro sustituto a los tribunales de justicia. La figura del juez queda, por tanto, sustituida por la del árbitro. Condado Plaza Hotel & Casino v. Asociación de Empleados de Casino de Puerto Rico, 99 J.T.S. 153, pág. 143; U.G.T. v. Challenger Caribbean Corp., supra, pág. 29; López v. Destilería Serrallés, 90 D.P.R. 245 (1964). Por ello, y por constituir el trámite ideal para resolver disputas obrero-patronales, los procedimientos de arbitraje y los laudos dictados en el ámbito patronal gozan de una especial deferencia ante los tribunales de justicia. S.I.U. de P.R. v. Otis Elevator Co., 105 D.P.R. 832, 836 (1977).
En cuanto a la función principal del árbitro en el arbitraje obrero-patronal, se ha expresado que se trata de interpretar las cláusulas de los convenios colectivos. J.R.T. v. National Packing Co., 112 D.P.R. 162, 166 (1982). Según lo allí resuelto, “al ejercer esta función, el árbitro no está limitado exclusivamente al contenido del convenio, sino que puede hacer uso de otras fuentes, siempre que no se aparte de la esencia del convenido”. Id. Su interpretación está limitada además por la claridad de las cláusulas del acuerdo. Id.
En el presente caso, las partes escogieron someter la controversia existente entre ellas a través del procedimiento de arbitraje. Las partes no pudieron ponerse de acuerdo en cuanto a la controversia a ser resuelta por el árbitro, por lo que la árbitro, conforme lo dispuesto en el Artículo 14, inciso b, del Reglamento del Negociado de Conciliación y Arbitraje, determinó que la controversia era determinar si el peticionario violó o no el artículo VI, sección 16, del convenio, y de determinar que violó el convenio, ordenar el remedio adecuado.
El convenio colectivo guarda silencio en cuanto a casos como el de autos en el que los empleados a considerarse para sustituir temporalmente una plaza pertenecen a una sección distinta a dicha plaza.
De otra parte, el rol del tribunal al revisar la validez de un laudo de arbitraje emitido a tenor de las disposiciones de un convenio colectivo es “verdaderamente estrecho y limitado, de clara autorestricción o abstención judicial cuando el laudo no tiene que ser emitido conforme a derecho”. J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 67 (1987); U.I.L. de Ponce v. Destilería Serrallés, Inc., supra. Se ha resuelto reiteradamente que los tribunales no intervendrán con los laudos de arbitraje patronal que no tienen que dictarse conforme a derecho, aunque quizás se hubiese llegado a una conclusión distinta de haberse sometido la cuestión ante sí. J.R.T. v. National Packing Co., supra, pág. 165.
Un estudio detenido de los autos, los documentos anejados como parte del recurso, las argumentaciones de las partes y el derecho aplicable, nos lleva a concluir, al igual que el foro de instancia, que los errores imputados al árbitro no fueron cometidos.
En mérito de lo antes expuestos, resolvemos que es procedente confirmar la sentencia del Tribunal de Primera Instancia.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
*854 Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2004 DTA 27
1.22 L.P.R.A. sec. 191 a 217.