Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| COTTON INTERNATIONAL, INC.<br><br>Apelante<br><br>v.<br><br>ALPHA DEMOLITIONS, INC. Y OTROS<br><br>Apelado | TA2026AP00182 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV07158<br><br>Sobre: Incumplimiento de Contrato; Cumplimiento Específico; Cobro de Dinero; Acción Bajo el Art. 1374 del Código Civil de Puerto Rico |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de marzo de 2026.

Comparece Cotton International, Inc. (en adelante Cotton o parte apelante) mediante un recurso de apelación, para solicitarnos la revisión de la *Sentencia* emitida y notificada el 23 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] Mediante la *Sentencia* apelada, el foro de instancia desestimó sin perjuicio la *Demanda* incoada en el caso de autos.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

El caso del título inició, el 11 de agosto de 2025, cuando Cotton presentó una *Demanda* sobre incumplimiento de contrato; cumplimiento específico; cobro de dinero, y acción bajo el

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 41.

Artículo1374 del Código Civil de Puerto Rico de 2020,[2] contra Alpha Demolitions, Inc. (en adelante, Alpha o parte apelada); United Surety & Indemnity Company (USIC), y la Universidad de Puerto Rico (UPR).[3] Adujo que Alpha contrató con la UPR para efectuar un proyecto de higienización y remediación de hongo, en varios edificios del Recinto de Humacao. Indicó que, para ejecutar el proyecto, Alpha la subcontrató a través de un *Restoration Services Agreement* (RSA) fechado el 31 de marzo de 2022, por el precio alzado de $1,027,359.90 dólares. Alegó que completó el proyecto a cabalidad, lo cual fue certificado por la UPR, sin embargo, Alpha incumplió con sus obligaciones de pago, según pactado en el RSA. Así, pues, afirmó que Alpha tenía un balance pendiente de $310,946.19, al cual se le debía sumar una penalidad de $15,547.45 dólares, conforme al 5% pactado por pagos tardíos, totalizando a una suma no menor de $326,493.64 dólares.

Luego de varios trámites procesales, mediante *Orden*, emitida y notificada el 18 de septiembre de 2025, el foro de instancia dispuso que se había adquirido jurisdicción sobre todas las partes demandadas.[4]

Subsiguientemente, el 28 de octubre de 2025, Alpha instó una *Moción solicitando desestimación*.[5] Esbozó que, luego de culminado el trabajo antes relatado por Cotton, la UPR se negó a pagar más de $300,000.00 dólares de la cantidad pactada, puesto a que, a su juicio, no se hicieron los trabajos según contratados. Indicó que la UPR elevó esta controversia ante el Tribunal Superior, quien determinó que la UPR actuó correctamente, por lo que procedía el descuento. Así, pues, planteó que la controversia, en este caso, se circunscribía a cuánto del descuento debía asumir Cotton y cuánto

---

[2] Ley Núm. 55-2020, 31 LPRA sec. 10271.
[3] SUMAC TPI, a la Entrada Núm. 1.
[4] *Íd.*, a la Entrada Núm. 9.
[5] *Íd.*, a la Entrada Núm. 20.

debía asumir Alpha. Siendo así, arguyó que, según el RSA, esta controversia se debía ventilar en arbitraje, pues no era una por falta de pago. A tenor, peticionó que se desestimara la demanda.

En el interín y en lo atinente, el 30 de octubre de 2025, ocurrieron varios eventos procesales los cuales incluyeron, pero no se limitaron a que USIC presentó una *Demanda contra terceros* contra Antonio Medina Eliza, Teresa M. Fernández González y la sociedad legal de gananciales compuesta por ambos.[6] Así las cosas, el 19 de diciembre de 2025, el licenciado José R. Olmo Rodríguez compareció para asumir representación legal sobre los terceros demandados.[7]

En lo relativo a la solicitud de desestimación, el 24 de noviembre de 2025, Cotton instó su *Oposición a moción de desestimación.*[8] Arguyó que la solicitud de Alpha descansó en la *Sentencia* del caso SJ2023CV00283, el cual vincula, únicamente, a la UPR y a Alpha, y del cual Cotton no formó parte. Por otra parte, subrayó que instó una acción en cobro de dinero, estrictamente vinculada al incumplimiento de la obligación de pago voluntariamente asumida por Alpha al amparo del RSA. De manera que esta controversia no podía atenderse mediante arbitraje, ya que los términos del RSA eran claros e inequívocos de que este tipo de disputas estaban exceptuados de cumplir con dicho procedimiento alterno de resolución de conflictos. Así, pues, solicitó que la moción de desestimación se declarara sin lugar.

Posteriormente, mediante *Orden* emitida y notificada el 1 de diciembre de 2025, la primera instancia judicial dio por sometido el asunto.[9]

---

[6] SUMAC TPI, a la Entrada Núm. 23.
[7] *Íd.,* a la Entrada Núm. 39.
[8] *Íd.,* a la Entrada Núm. 34.
[9] *Íd.,* a la Entrada Núm. 36.

De ahí, el 23 de diciembre de 2025, el foro de instancia emitió la *Sentencia* objeto de revisión.[10] Mediante este dictamen, el foro apelado declaró *Ha lugar* la solicitud de desestimación presentada por Alpha. En consecuencia, desestimó la demanda sin perjuicio.

Mediante el dictamen apelado, el foro *a quo* concluyó que era un hecho incontrovertido que existía una suma de dinero que aún estaba pendiente por pagarse, así como que esta suma estaba inherentemente relacionada a una controversia sobre el contrato principal entre el dueño de la obra, la UPR, y el contratista, Alpha. Ahora bien, subrayó que dicha controversia ya fue resuelta en el caso SJ2023CV00283, confirmada por el Tribunal de Apelaciones, y se encontraba pendiente ante la consideración del Tribunal Supremo.[11] Por otro lado, el juzgador de instancia resaltó que el Tribunal, en el caso SJ2023CV00283, determinó que la suma pendiente estaba sujeta a un ajuste debido a que el contrato principal no era uno a precio alzado, si no uno por una suma global o cantidad máxima.

Establecido lo anterior, mediante el dictamen apelado, el foro primario razonó que el subcontrato dependía de la relación jurídica establecida entre el contratista y el dueño de la obra, de modo que cualquier alteración sustancial que sufriera el contrato principal tendría consecuencias sobre el subcontrato. Así, pues, determinó que lo dictado en el caso SJ2023CV00283 alteraba de manera sustancial el precio total del contrato. Por otra parte, entendió que permitir que Cotton cobrara el precio del contrato originalmente pactado, sin asumir el ajuste del contrato principal, provocaría un enriquecimiento injusto por esta parte. A tenor, desestimó sin perjuicio la *Demanda*.

---

[10] SUMAC TPI, a la Entrada Núm. 41.
[11] Luego de emitirse el dictamen apelado, mediante *Resolución*, el Tribunal Supremo declaró sin lugar el auto solicitado. Véase alfanumérico CC-2025-045.

Finalmente, acentuó que el referido dictamen no afectaba el derecho de Cotton de presentar una acción en cobro de dinero en contra de Alpha, en caso de que esta última se negara a emitir el pago que se determine, una vez se realizara el ajuste correspondiente al contrato principal.

En desacuerdo, el 7 de enero de 2026, Cotton presentó una *Solicitud de Reconsideración*,[12] la cual fue declarada *No Ha Lugar*, el 20 de enero de 2026.[13]

En desacuerdo aún, el 19 de febrero de 2026, Cotton interpuso un recurso de apelación, en el cual esbozó la comisión de los siguientes cuatro (4) señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TPI AL DESESTIMAR LA DEMANDA AL CONCLUIR QUE LA SENTENCIA DICTADA EN EL CASO CIVIL NÚM. SJ2023CV00283, PLEITO EN EL CUAL COTTON NO FUE PARTE, "ALTERA DE MANERA SUSTANCIAL EL PRECIO ALZADO DEL CONTRATO SUSCRITO ENTRE ALPHA Y COTTON", A PESAR DE QUE DICHO DICTAMEN NO ES OPONIBLE A COTTON Y AL JUSTIFICAR LA DESESTIMACIÓN MEDIANTE UNA IMPROCEDENTE APLICACIÓN DE LA DOCTRINA DE ENRIQUECIMIENTO INJUSTO, A PESAR DE QUE LA RECLAMACIÓN DE COTTON SE BASA EN UNA OBLIGACIÓN CONTRACTUAL VÁLIDA Y EXIGIBLE.
>
> **SEGUNDO ERROR:** ERRÓ EL TPI AL DESESTIMAR LA DEMANDA TRAS CONCLUIR QUE LA MERA EXISTENCIA DE LA CLÁUSULA DE ARBITRAJE PACTADA ENTRE ALPHA Y COTTON LO DESPOJABA DE JURISDICCIÓN SOBRE LA MATERIA, IGNORANDO EL LENGUAJE CLARO E INEQUÍVOCO DE LA SECCIÓN 8.3 DEL RSA, QUE EXCLUYE EXPRESAMENTE DEL ARBITRAJE LAS CONTROVERSIAS RELACIONADAS CON LA FALTA DE PAGO; EN CONSECUENCIA, EL TPI OSTENTA JURISDICCIÓN PARA ADJUDICAR LAS CAUSAS DE ACCIÓN INSTADAS POR COTTON.
>
> **TERCER ERROR:** ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN DIRECTA E INDEPENDIENTE INSTADA POR COTTON CONTRA LA UPR AL AMPARO DEL ARTÍCULO 1374 DEL CÓDIGO CIVIL, EXTENDIENDO LOS EFECTOS DE UNA CLÁUSULA DE ARBITRAJE QUE NO VINCULA A LA UPR Y SIN QUE EXISTIERA SOLICITUD NI FUNDAMENTO ALGUNO QUE JUSTIFICARA TAL DESESTIMACIÓN.
>
> **CUARTO ERROR:** ERRÓ EL TPI AL DESESTIMAR LA ACCIÓN DIRECTA CONTRA USIC BAJO LA FIANZA DE PAG, A PESAR DE QUE LA FIADORA NO ES PARTE DEL RSA, NO SUSCRIBIÓ LA CLÁUSULA DE ARBITRAJE Y RESPONDE SOLIDARIAMENTE EN VIRTUD DE UN CONTRATO DISTINTO, SIN QUE MEDIARA SOLICITUD O ANÁLISIS JURÍDICO QUE SUSTENTARA SU EXCLUSIÓN DEL PLEITO.

---

[12] SUMAC TPI, a la Entrada Núm. 42.
[13] *Íd.,* a la Entrada Núm. 48.

Mediante *Resolución* emitida el 20 de febrero de 2026, concedimos a la parte apelada hasta el 20 de marzo de 2026, para presentar su alegato en oposición. El 20 de marzo de 2026, se presentaron tres (3) escritos. En el primero, compareció la UPR mediante E*scrito en oposición a recurso de apelación.* En el segundo, compareció USIC mediante *Oposición a recurso de apelación.* Por otro lado, en el tercero, compareció Alpha mediante escrito intitulado *Oposición.* Solicitaron que la sentencia apelada fuese confirmada. Con el beneficio de la comparecencia de las partes, procederemos a disponer del presente recurso.

II

## A. La Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[14] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado para solicitar que se desestime la demanda presentada en su contra, incluso sin necesidad de formular una alegación previa.[15] En específico, la regla establece que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
>
> (2) falta de jurisdicción sobre la persona;
>
> (3) insuficiencia del emplazamiento;
>
> (4) insuficiencia del diligenciamiento del emplazamiento;
>
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
>
> (6) dejar de acumular una parte indispensable.[16]

---

[14] 32 LPRA Ap. V, R. 10.2.
[15] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006).
[16] Regla 10. 2 de Procedimiento Civil, *supra.*

Al atender a una moción de desestimación fundamentada en que la reclamación no justifica la concesión de un remedio, el juzgador de instancia deberá tomar por cierto todos los hechos bien alegados en la demanda, así como aquellos que hayan sido aseverados de manera clara, concluyente y que de su faz no den margen a dudas.[17] A su vez, deberá interpretar las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más favorable posible para la parte demandante, para así determinar si la misma es suficiente para constituir una reclamación válida.[18] Ello, puesto a que, en nuestro ordenamiento jurídico, se ha desarrollado una política pública a favor de que los casos se ventilen en los méritos.[19] A esos efectos, la desestimación únicamente procederá cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito, o que la parte demandante no tiene derecho a obtener algún remedio.[20] Además, nuestro Tribunal Supremo ha sido enfático en que la desestimación no procede si la reclamación es susceptible de ser enmendada.[21]

### B. El Principio de Justiciabilidad y la Madurez

El principio de la justiciabilidad persigue evitar emitir decisiones en casos que realmente no existen o dictar una sentencia que no tendrá efectos prácticos sobre una controversia.[22] En ese contexto, un asunto no es justiciable cuando (i) se trata de resolver una cuestión política; (ii) una de las partes carece de legitimación activa para promover un pleito; (iii) después de comenzado el litigio

---

[17] *González Méndez v. Acción Social et al*, 196 DPR 213, 234 (2016); *Accurate Sols. v. Heritage Enviroment,* 193 DPR 423, 433 (2015); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

[18] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 505 (1994).

[19] *González Méndez v. Acción Social et al.,* supra, a la pág. 235.

[20] *Íd.*

[21] *Accurate Sols. v. Heritage Enviroment,* supra, a la pág. 433; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008); *Colón v. Lotería*, supra, a la pág. 649; *Clemente v. Depto. de la Vivienda*, 114 DPR 763, 771 (1993).

[22] *Moreno Orama v. UPR,* 178 DPR 969, 973 (2010).

hechos posteriores lo tornan en académico; (iv) las partes pretenden obtener una opinión consultiva o, (v) cuando se pretende promover un pleito que no está maduro.[23]

En cuanto a la doctrina de madurez, los tribunales debemos examinar si la controversia sustantiva planteada en el recurso ante nuestra consideración está definida concretamente, de manera que nos permita evaluarla en sus méritos, y si el daño aducido es suficiente para requerir adjudicación.[24] Así, pues, un recurso judicial es prematuro cuando el asunto del cual se trata no está listo para adjudicación; esto es, cuando la controversia no está debidamente delineada, definida y concreta.[25] Como ha pronunciado reiteradamente el Tribunal Supremo de Puerto Rico, un recurso prematuro adolece del insubsanable defecto de privar de jurisdicción al Tribunal al cual se recurre.[26]

### III

En el presente recurso, el apelante, mediante sus cuatro (4) señalamientos de error nos convida a concluir que el tribunal falló al desestimar la *Demanda* de epígrafe. Por estar íntimamente relacionados, atenderemos los referidos errores de manera conjunta.

De entrada, advertimos que nuestro Tribunal Supremo ha sido enfático en que "la apelación o revisión se da contra la sentencia o decisión apelada; es decir, contra el resultado y no contra sus fundamentos".[27] Establecido lo anterior, procedemos a disponer del recurso ante nuestra consideración.

---

[23] *Crespo v. Cintrón*, 159 DPR 290, 298 (2003); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 932 (2011); *Noriega v. Hernández Colón*, 135 DPR 406, 421–22 (1994).

[24] *Com. de la Mujer v. Srio de Justicia*, 109 DPR 715, 722 (1980).

[25] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Juliá et al. v. Epifanio Vidal, S.E.,* 153 DPR 357, 366-367 (2001).

[26] *Juliá et al. v. Epifanio Vidal, S.E.*, supra, a la pág. 365.

[27] *Pueblo de Puerto Rico v. José Pérez Rodríguez*, 159 DPR 554, 566 (2003); *Díaz Martínez v. Policía de Puerto Rico*, 134 DPR 144, 157 (1993); *Raquel Álvarez Figueredo v. Sebastián González Lamela*, 134 DPR 374, 380 (1993); *Asociación de Pescadores de Punta Figueras, Inc. et al. v. Marina de Puerto del Rey, Inc. et al.*, 155 DPR 906, 920 (2001).

La controversia de marras inició cuando el apelante presentó una *Demanda* mediante la cual alegó que, allá para marzo de 2022, Alpha lo subcontrató para efectuar un proyecto de higienización y remediación de hongo en varios edificios del Recinto de Humacao, el cual completó a cabalidad. Sin embargo, reclamó que Alpha había incumplido con sus obligaciones de pago y tenía un balance pendiente de $310,946.19, al cual se le debía sumar una penalidad de $15,547.45 dólares, conforme al 5% pactado por pagos tardíos, totalizando a una suma no menor de $326,493.64 dólares. En el pliego, incluyó a otras partes codemandadas, entre estas la UPR y USIC, quienes, según acotó, eran igualmente responsables de la suma debida.

Luego de varios trámites procesales, innecesarios de pormenorizar, Alpha solicitó la desestimación de la *Demanda*. En esta arguyó que, mediante el caso SJ2023CV00283, la UPR elevó ante el Tribunal Superior una controversia respecto a la cantidad pactada en el contrato principal por los trabajos efectuados. Indicó que el Tribunal determinó en ese caso que la cantidad pactada ameritaba ser ajustada. Siendo así, Alpha planteó que la decisión en el caso SJ2023CV00283 generó una controversia respecto a cuánto del descuento debía asumir cada una de las partes, la cual impedía atender la controversia traída mediante la *Demanda* de título y la cual se debía atender mediante arbitraje, según el contrato entre las partes.

En reacción, el apelante se opuso a la desestimación. Planteó, entre otras cosas, no haber sido figurado como parte en el caso SJ2023CV00283, por lo cual la decisión no lo vinculaba. Asimismo, manifestó que dado a que la *Demanda* presentada se trataba de un incumplimiento de pago, no podía atenderse en arbitraje. Esto, puesto a que el contrato con Alpha, específicamente, exceptuaba

este tipo de controversias de la cláusula contractual que mandaba a atender las disputas entre las partes mediante arbitraje.

Evaluadas las posturas de las partes, el tribunal *a quo* entendió que procedía la desestimación de la *Demanda*. Estamos de acuerdo.

Sabido es que, dado a que en nuestro ordenamiento jurídico se ha desarrollado una política pública a favor de que los casos se ventilen en sus méritos,[28] la desestimación de una reclamación solo procederá cuando el tribunal determine, sin ambigüedad, que la demanda carece de todo mérito o que la parte demandante no tiene ningún remedio.[29] Ahora bien, por otra parte, en nuestro ordenamiento jurídico se ha consagrado el principio de justiciabilidad, el cual persigue evitar dictar una sentencia que no tendrá efectos prácticos sobre una controversia.[30] Se ha entendido que una de las razones por la cuales un caso no es justiciable es cuando un pleito no está maduro.[31] Esto es cuando el asunto del cual se trata no está listo para adjudicación.[32] Tras evaluar los autos ante nuestra consideración, entendemos que esto es precisamente lo que ocurre con la controversia presentada por el apelante.

Aunque es cierto que la parte apelante nada tuvo que ver con el caso SJ2023CV00283, no es menos cierto que el ajuste que amerita hacer al contrato original, a raíz de la *Sentencia final* emitida en el referido pleito, y confirmada por el tribunal intermedio, tendrá consecuencias sobre el subcontrato sobre el cual la parte apelante basa su reclamación. Así pues, no es posible que la parte apelante reclame cobrar el precio pactado en el contrato, sin que antes se

---

[28] *González Méndez v. Acción Social et al.,* supra, a la pág. 235.
[29] *Íd.*
[30] *Moreno Orama v. UPR,* supra, a la pág. 973.
[31] *Com. de la Mujer v. Srio de Justicia,* supra, a la pág. 722.
[32] *Torres Martínez v. Torres Ghigliotty,* supra, a la pág. 98; *Juliá et al. v. Epifanio Vidal, S.E.,* supra, a las págs. 366-367.

haga el ajuste correspondiente, mandado por el tribunal de instancia en el caso SJ2023CV00283.

Es norma harta conocida que cuando un asunto es prematuro adolece del insubsanable defecto de privar de jurisdicción al Tribunal al cual se recurre.[33] Siendo así, el tribunal de instancia solo debía declarar que el asunto ante su consideración era uno que no estaba aún maduro, y desestimarlo sin entrar en sus méritos.[34] Por lo anterior, se hacía innecesario que el tribunal pasara juicio sobre si lo solicitado por el apelante era enriquecimiento injusto y menos aún si la cuestión del ajuste debía atenderse mediante arbitraje.

Por lo anterior, nos es forzoso confirmar el dictamen apelado, pero por los fundamentos que anteceden, y no por los elaborados por el tribunal *a quo*. A tenor, concluimos que ninguno de los errores esgrimidos por el apelante se cometió.

Ahora bien, según explicó la primera instancia judicial, una vez se realice el ajuste correspondiente, nada impide que, de incumplirse con el pago correspondiente, la parte que así lo requiera acuda ante el tribunal con competencia.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[33] *Juliá et al. v. Epifanio Vidal, S.E.*, supra, a la pág. 365.
[34] *R&B Power, Inc. v. Junta de Subasta ASG*, 213 DPR 685, 698 (2024).