RAQUEL ÁLVAREZ FIGUEREDO, demandante y recurrida, *v.* SEBASTIÁN GONZÁLEZ LAMELA, demandado y recurrente.

*Número:* RE-90-293          *Resuelto:* 28 de octubre de 1993

*Roberto Santana Aparicio,* de *Del Toro & Santana,* abogado del recurrente; *Luis H. Sánchez Caso,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Mediante escritura otorgada el 11 de julio de 1972 se sometió el Condominio McLeary al régimen de propiedad horizontal. Se dispuso que en el piso 10 ubicarían dos (2) *pent houses,* cuyas azoteas constituirían elemento privado. Sebastián González Lamela adquirió el *pent-house* 2 y construyó una escalera interior de acceso a una edificación de concreto y madera que él construyó sobre la azotea del apartamento. Además, compró los apartamentos 402 y 802 a los cuales hizo varios arreglos que afectaron la fachada exterior del edificio.

No conforme con dicha situación, Raquel Álvarez Figueredo, titular del apartamento 702, lo demandó alegando

que los cambios de fachada y las construcciones fueron realizadas sin el consentimiento del Consejo de Titulares del Condominio McLeary y en violación a la Ley de la Propiedad Horizontal.[1] González Lamela contestó y adujo que el tribunal carecía de jurisdicción y que la controversia debía ser resuelta por el Departamento de Asuntos al Consumidor (D.A.Co.); además, alegó que las construcciones se hicieron con autorizaciones concedidas al amparo de la Ley de la Propiedad Horizontal.

Oportunamente el Tribunal Superior, Sala de San Juan, (Hon. Melvin A. Padilla Feliciano, Juez), dictó sentencia sumaria parcial. Determinó que la controversia se limitaba a resolver si podía elevarse una edificación sobre el techo de un apartamento *pent house* de un edificio sometido al régimen de propiedad horizontal, cuando la escritura matriz sólo disponía que la azotea era elemento privado del apartamento. Al respecto, concluyó que aun cuando la escritura matriz así lo estipulaba, no dispuso cómo podría utilizarse; en consecuencia, su uso debía ceñirse a las disposiciones de la Ley de la Propiedad Horizontal. Razonó que dicha ley —Ley Núm. 104 de 25 de junio de 1958, según enmendada por la Ley Núm. 157 de 4 de junio de 1976 (31 L.P.R.A. sec. 1291 *et seq.*)— caracterizaba la azotea como elemento común general, excepto pacto en contrario. No obstante, señaló que el vuelo —parte ideal del edificio donde puede levantarse una edificación— *por disposición de ley, no era susceptible de apropiación particular* y, por ende, González Lamela no podía construir sobre la azotea para su beneficio privado, aun cuando hubiese obtenido el consentimiento de todos los titulares. Finalmente, la ilustrada sala sentenciadora concluyó que tampoco podía cambiar la fachada, pues carecía de ese consentimiento.

---

[1] Reclamó el resarcimiento de los daños y perjuicios sufridos como consecuencia de un altercado público en que estuvo implicado el demandado González Lamela. Esta segunda causa de acción no fue resuelta en la sentencia parcial que nos ocupa. El foro de instancia la dejó pendiente hasta la celebración de una vista evidenciaria.

A solicitud(²) de González Lamela revisamos.(³)

## II

Es un imperativo decisorio referirnos sucintamente a los preceptos de la Ley de la Propiedad Horizontal relativos al techo, vuelo y azotea. Aun cuando estos tres (3) conceptos están intrínsecamente ligados entre sí, no podemos perder de perspectiva que cada uno tiene un significado distinto y ha sido objeto de un tratamiento y de una reglamentación individual.

En *Consejo de Titulares v. Vargas*, 101 D.P.R. 579, 583 (1973), acogimos las definiciones esbozadas por Borja Martínez(⁴) y resolvimos que el *techo* es " 'la parte inferior y superior de un edificio que lo cubre y cierra' ", y la *azotea* " 'la cubierta llana de un edificio dispuesta para poder andar por ella de donde se deduce según su configuración física un techo puede o no ser al mismo tiempo azotea' ". Además, definimos el *vuelo* como "la parte ideal del edificio susceptible de ser construida, no un elemento material y tangible, sino el espacio aéreo en la parte superior de la cubierta o techo en el que puede ser elevada la edificación. *Llámase sobreelevación al acto de utilizar ese derecho*". (Énfasis suplido.) Íd., pág. 585.

---

(²) Nos plantea que el foro de instancia erró al fundamentar su decisión en la aplicación retroactiva de las enmiendas que se introdujeron por la Ley Núm. 157 de 4 de junio de 1976 (31 L.P.R.A. sec. 1291 *et seq.*); que se menoscabaron sus derechos adquiridos antes de su aprobación, en violación a la disposición constitucional; que el tribunal carecía de jurisdicción, y que existía controversia sobre si los titulares prestaron su consentimiento unánime a los cambios que impelía dictar sentencia sumaria.

(³) Nuestra resolución al efecto se emitió el 8 de junio de 1990. Con posterioridad, desestimamos un magro Recurso de Apelación (AC-90-369), que contenía única y escuetamente el mismo planteamiento constitucional esbozado en la revisión que nos ocupa. En la revisión, además de dicho planteamiento constitucional, se hacen los otros señalamientos al amparo de la Ley de la Propiedad Horizontal.

(⁴) *Consejo de Titulares v. Vargas*, 101 D.P.R. 579, 583 (1973), en el que aludimos a la obra de Borja "La Propiedad de Pisos o Departamentos en el Derecho Mexicano".

■ El Art. 11 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291i, *vigente*[5] cuando el edificio McLeary fue sometido a dicho régimen, prescribía que el techo constituía un elemento común general, e igual la azotea, *salvo pacto en contrario*. Sin embargo, nada estipulaba en cuanto al vuelo, es decir, si era o no un elemento común general.

En armonía con esas disposiciones, según indicado, en la escritura matriz se hizo constar que en el piso 10 del Condominio estarían localizados los *pent houses* cuyas azoteas serían un elemento privado de cada apartamento.[6] En lo pertinente, traducido al vernáculo, la escritura disponía: "La azotea de este 'departamento de azotea' es *un elemento privado de dicha unidad*, con un área aproximada de novecientos cuarenta y nueve pies cuadrados y cinco mil cuatrocientos doce con diez milésimas pies cuadrados." (Traducción nuestra.) Apéndice VII, pág. 043.

■ No se cuestiona que el recurrente González Lamela invadió el vuelo del edificio al levantar una edificación sobre el área de la azotea que le pertenecía. Aunque coincidimos que en la escritura matriz podía concedérsele el uso privado del vuelo y el derecho de sobreelevación —la ley entonces vigente no catalogaba al vuelo como elemento común general— sin embargo, en *Consejo de Titulares v. Vargas*, supra, pág. 586, resolvimos que el derecho de sobreelevación "por traer consigo la introducción al edificio de nuevos elementos arquitectónicos, económicos y estéticos, y por afectar fundamentalmente el régimen de copropiedad, *no puede nacer de inferencias o especulaciones. Su concesión debe ser clara y explícita*". (Énfasis suplido.) Distinto a su contención, no se le concedió el derecho de sobreelevación para invadir el vuelo del edificio. La escritura matriz es sumamente parca. Se limitó a concederle el uso

---

[5] Art. 11 de la Ley Núm. 104 de 25 de junio de 1958 (31 L.P.R.A. sec. 1291i).

[6] Además, en dicho piso estaría localizado un vestíbulo (*lobby*) cuya azotea sería un elemento común general.

de la azotea; ello no es suficiente para inferir el derecho de sobreelevación.

Aún así, González Lamela insiste en que el foro de instancia fundamentó su decisión en las enmiendas introducidas por la Ley Núm. 157, *supra*, y su casuística. Enfatiza que esas enmiendas dispusieron que el vuelo sería un elemento común general y la jurisprudencia estableció que no era susceptible de apropiación particular. *Costa Linda, Inc. v. Registrador*, 109 D.P.R. 861 (1980). Sostiene que dichas normas entraron en vigor después de que el Condominio McLeary fue sometido al régimen de propiedad horizontal y él compró su apartamento. De ahí razona que no podía aplicársele la ley retroactivamente en menoscabo de sus derechos adquiridos previamente. No tiene razón.

■ Su señalamiento parte de la premisa errónea de que se le concedió el derecho de sobreelevación. Según expuesto, nunca lo tuvo; por lo tanto, las enmiendas a la ley no pudieron afectarle. Como toda revisión se da contra la sentencia y no sus fundamentos, en este extremo, debemos confirmar al foro de instancia.

## III

En la alternativa, González Lamela reproduce la contención de que la edificación sobre la azotea y cambios de fachada fueron aprobados con el consentimiento unánime de los titulares del condominio. Aduce que el foro de instancia erró al dictar sentencia sumaria porque existía esa controversia. Tampoco tiene razón.

■ La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, autoriza sentencia sumaria si " 'las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material ...' ". *Corp. Presi-*

*ding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

Según los autos, la demandante Álvarez Figueredo sostuvo que no existía controversia sobre el hecho de que el Consejo de Titulares *no* había prestado su consentimiento. Acompañó declaraciones juradas de tres (3) condóminos expositivas de que nunca se había celebrado reunión al efecto. En oposición, González Lamela presentó declaraciones juradas de cuatro (4) titulares en las que se exponía que en reunión de 6 de agosto de 1987 se acordó que las construcciones efectuadas hasta ese momento quedarían como estaban.

Ciertamente, de su faz, estas declaraciones juradas generaron una controversia sobre si los titulares prestaron o no su consentimiento. Ahora bien, nos hemos percatado que González Lamela también presentó copia de la minuta de la aludida reunión. De dicha minuta surge que el quorum fue de 74.6530. Además, no se desprende lenguaje alguno en torno a que expresamente se acordara y consignara la aprobación de las construcciones de González Lamela. Lo único que los titulares aprobaron fue lo siguiente:

> Se decidió unánimemente que en el futuro todos los DUEÑOS estarían sujetos al reglamento del Condominio y tendrían que cumplir con las disposiciones de la Ley de Propiedad Horizontal y de la Escritura Matriz — véase el Artículo VIII del Reglamento — que establece que ningún dueño podrá "llevar a cabo modificación estructural o alteración alguna o instalación de la misma a su unidad sin el consentimiento previo del CONSEJO debidamente solicitado mediante solicitud enviada por correo o entregada a cualquier miembro de la Junta. El CONSEJO contestará cualquier solicitud de este tipo dentro de diez días de la fecha de recibo de la misma y la falta de contestación dentro de dicho período se entenderá como una aprobación de la solicitud". (Traducción nuestra.) Apéndice VIII, pág. 078.

Este lenguaje no es del todo claro. Del mismo podría inferirse que, en efecto, los titulares aprobaron y avalaron las construcciones realizadas previamente sin el consenti-

miento de los titulares. Coincidimos con el recurrente González Lamela de que existe controversia real sobre si los titulares prestaron su consentimiento unánime. Sin embargo, esa controversia no recae sobre un hecho esencial, ya que para la fiel solución del caso, no es relevante si se obtuvo o no el consentimiento unánime de los titulares. Nos explicamos.

Michel J. Godreau, en su obra *El Condominio*, San Juan, Ed. Dictum, 1992, señala que la "[l]ey le otorga al Consejo de Titulares las máximas prerrogativas respecto al gobierno del inmueble. ... Sus acuerdos constituyen, luego de la Ley, la escritura matriz y del Reglamento, fuente vinculante para todos los condómines". Esa visión responde a que el Consejo de Titulares es " 'el órgano supremo de la propiedad horizontal, a través del cual se manifiesta la voluntad de los propietarios singulares y en el que radican las fa[c]ultades rectoras de este régimen jurídico, para el mejor logro de los intereses comunes" '. M. Fernández Martín–Granizo, *La Ley de Propiedad Horizontal en el Derecho español*, Madrid, Ed. Edersa, 1983, pág. 908; *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, 133 D.P.R. 488 (1993).

■ Según señalamos anteriormente, bajo la Ley de la Propiedad Horizontal vigente al momento en que el demandado González Lamela adquirió y realizó la estructura sobre la azotea, la construcción podía aprobarse con el consentimiento *unánime* de los titulares, ya que el vuelo podía ser un elemento privado, y que el Art. 18 de la Ley de la Propiedad Horizontal, 31 L.P.R.A. sec. 1291p, disponía que "[n]ingún titular podrá, sin el consentimiento unánime de los otros, construir nuevos pisos, hacer sótanos o excavaciones, o realizar obras que afecten a la seguridad, solidez y conservación del edificio". Forzoso es concluir que si los titulares hubiesen prestado su consentimiento unánime bajo las disposiciones de la Ley Núm. 104, *supra,* tendría razón González Lamela de que adquirió el derecho de so-

breelevación y podía construir válidamente sobre la azotea.

No obstante, su contención confronta la dificultad de que mientras la Ley Núm. 104, *supra*, estuvo vigente, González Lamela no obtuvo el consentimiento unánime de los titulares. Lo intentó en 1987, es decir, once (11) años después de entrar en vigor la Ley Núm. 157, *supra*,[7] enmendatoria del régimen legal de propiedad horizontal. Y bajo el estado de derecho actual, no puede adquirirlo pues el vuelo *no* es susceptible de constituir ni convertirse en elemento privado por ser común necesario que no admite pacto en contrario. *Costa Linda v. Registrador*, supra.

Idéntico análisis y solución se impone para los cambios de fachada. En términos absolutos, la Ley Núm. 157, *supra*, lo prohíbe. 31 L.P.R.A. sec. 1291m-1. Los titulares no están facultados para autorizarlos.

## IV

La imposibilidad *de iure* para convalidar los cambios realizados en el edificio, mediante acuerdo unánime, nos permite dictaminar que no hay fundamento para sostener la contención de que el Tribunal Superior carecía de jurisdicción.

El Art. 48 de la Ley de la Propiedad Horizontal,

---

(7) La Sec. 13 de la Ley Núm. 157 (31 L.P.R.A. sec. 1291n.) dispone, en lo pertinente:

"Esta ley entrará en vigor noventa (90) días después de su aprobación y sus disposiciones regirán a todo inmueble sometido al régimen de Propiedad Horizontal, cualquiera que sea el momento en que fuera sometido a dicho régimen.

"Las comunidades de titulares que ya han sido sometidas al régimen de Propiedad Horizontal *tendrán un plazo de un año a partir de la vigencia de la presente ley para adaptar sus escrituras de constitución y Reglamento a lo dispuesto en esta ley en lo que estuviere en contradicción con sus preceptos.* Transcurrido dicho término las disposiciones de las escrituras de constitución y de los reglamentos de tales inmuebles no podrán ser aplicados en contradicción con lo establecido en la presente ley, y cualquiera de los titulares podrá instar judicialmente la adaptación prevenida." (Énfasis suplido.)

31 L.P.R.A. sec. 1294 —dispositivo de que las acciones de impugnación de determinaciones del Consejo de Titulares en condominios destinados a vivienda se ventilarán en D.A.Co., *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 434 (1983)— *es inaplicable.* No hay "acuerdo" alguno en qué apuntalar este reclamo.

Incidentalmente, notamos que la causa de acción de Álvarez Figueredo se funda en una violación a la Ley de Propiedad Horizontal; pide indemnización por los daños sufridos. No tiene razón, pues, González Lamela al señalar que ella fraccionó sus causas de acción por haber acudido a D.A.C.O. a impugnar las elecciones de la Junta de Directores, *asunto* distinto a la controversia que nos ocupa.

## V

Finalmente, González Lamela argumenta haber adquirido la estructura sobre la azotea por prescripción ordinaria, pues la construyó once (11) años antes de presentarse la demanda.

El Art. 1840 del Código Civil dispone que "[p]ara la prescripción ordinaria del dominio y demás derechos reales se necesita poseer las cosas con buena fe y justo título por el tiempo determinado en la ley". 31 L.P.R.A. sec. 5261. González Lamela carece de justo título sobre la edificación; no pudo adquirirla por usucapión. *Justo título* es "el que legalmente baste para transferir el dominio o derecho real de cuya prescripción se trate". Art. 1852 del Código Civil, 31 L.P.R.A. sec. 5273.

Señala J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1971, T. III, Vol. 1, págs. 365, 366, que este precepto se refiere al título en sentido material, es decir, como un acto o negocio jurídico, y él debe ser "justo, verdadero, válido y probado". Al definirlo conceptualmente nos dice que: "ha de tratarse de un acto o negocio jurídico

que, por la calificación jurídica que le corresponda, sea congruente con la transferencia del dominio o del derecho real a favor del usucapiente, aunque por concurrir determinado vicio o defecto no pueda cumplir su natural finalidad"; y al definir el concepto de *verdadero*, expresa que el "negocio jurídico) ha de tener existencia real con independencia de los defectos que le acompañen. Por lo tanto, están excluidos los títulos simulados y putativos, es decir, aquellos que no existen, ya sea porque las partes se hayan limitado a crear una apariencia de título ... o porque haya mediado error acerca del hecho mismo de la existencia del título ...".

El negocio jurídico mediante el cual González Lamela adquirió la propiedad fue la compraventa del inmueble *sujeto* a las condiciones establecidas en la escritura matriz. Aunque compró el *pent house* 2 y el uso de la azotea, no adquirió el derecho de sobreelevación. La ausencia de justo título sobre la edificación levantada impide la usucapión.

Por las razones expuestas, *se dictará sentencia confirmatoria* .

El Juez Asociado Señor Hernández Denton concurre con el resultado sin opinión escrita.