Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| OLGA BEATRIZ CASTELLÓN MIRANDA<br><br>Querellante-Recurrente<br><br>Vs.<br><br>CONSEJO DE TITULARES Y JUNTA DE DIRECTORES DEL CONDOMINIO OCEAN ONE; CARMEN BARRETO CRUZ<br><br>Querellado-Recurrido<br><br>Departamento de Asuntos del Consumidor<br><br>Agencia Recurrida | TA2025RA00285 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.<br><br>C-SAN-2022-0011841<br><br>Sobre:<br><br>LEY DE CONDOMINIOS |

Panel integrado por su presidente, el Juez Rodríguez Flores, el Juez Cruz Hiraldo y el Juez Sánchez Báez.[1]

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de abril de 2026.

Comparece la parte recurrente, la licenciada Olga Beatriz Castellón Miranda, solicita la revocación de la *Resolución* emitida por el Departamento de Asuntos del Consumidor, querella C-SAN-2022-0011841, dictada el 31 de julio de 2025 y notificada por correo regular el mismo día. Mediante la resolución el DACo desestimó la querella promovida por la parte recurrente.

Por los fundamentos expuestos en esta sentencia, *confirmamos* la resolución recurrida.

*-I-*

El 12 de julio de 2022 la parte recurrente, titular del apartamento 401 en el Condominio Ocean One de San Juan

---

[1] Mediante la OATA-2025-206 debido a la inhibición de la Hon. Ivelisse M. Domínguez Irizarry, se designa al Hon. Fernando L. Rodríguez Flores, en su sustitución.

presentó una querella en contra de la Junta de Directores del condominio. En la querella también incluyó a la presidenta de la Junta de Directores, en su carácter personal. Alegó que, la presidenta de la junta violentó la Ley de Condominios de Puerto Rico al efectuar una construcción que alteró ilegalmente la fachada del edificio sin contar con el consentimiento unánime del consejo de titulares.

La vista adjudicativa ocurrió los días 10 de julio, 24 y 26 de septiembre de 2024 y 25 de abril de 2025. Durante el transcurso de la vista testificó la parte recurrente, la presidenta de la Junta de Directores, el ingeniero Camilo Almeida como perito de la parte recurrente, y el arquitecto José Godínez como perito del condominio. El arquitecto Godínez opinó que la nueva construcción cumplió con los permisos gubernamentales pertinentes y es esencialmente igual al diseño aprobado por el Consejo de Titulares. Según el testimonio del perito, la diferencia entre el diseño original y la obra terminada es una variación en la altura del techo del balcón del piso 3. Testificó que la variación fue necesaria para cumplir con la altura requerida en el reglamento de construcción de la zona del Condado. Evaluada la prueba, el DACo emitió la *Resolución* el 31 de julio de 2025, notificada el mismo día. El departamento declaró "No Ha Lugar". En la resolución consignó las siguientes determinaciones de hechos:

1. La parte querellante, Olga Castellón Miranda es titular del apartamento 401 del Condominio Ocean One localizado en San Juan, Puerto Rico. Adquirió dicha propiedad mediante la escritura número 55, sobre compraventa, otorgada el 17 de octubre de 2013 ante el notario Carlos H. Rafucci Caro.

2. El condominio Ocean One se encuentra sometido al régimen de Propiedad Horizontal, es de carácter residencial y consta de 6 apartamentos. El mismo fue sometido al régimen mediante la escritura número 9, otorgada el 8 de mayo de 2006 ante la notaria Magdalis Rodríguez Ruiz.

3. El 14 de julio de 2020, la parte querellada celebró una asamblea ordinaria del Consejo de Titulares del condominio para tratar varios asuntos que se encontraban contenidos en la agenda. Al momento de los hechos existían solo 4 titulares en el condominio, toda vez que el señor Robert Robinson era titular de 3 apartamentos de los seis que tiene el condominio.

4. Conforme al Acta de la asamblea de 14 de julio de 2020, a la misma comparecieron 3 titulares presentes. Estos fueron el Dr. José Santana, la presidenta Carmen Barreto y la querellante Olga Castellón quien ocupaba el puesto de secretaria. Según se establece en el punto 4 del Acta, se indicó que se cotizaría para la construcción de un cuarto de planta eléctrica para tenerla bajo techo, conservada mejor ante la corrosión y poder mantener un dique seguridad contra derrames de diésel en todo momento. La señora Barreto presentó moción donde ofreció cubrir el costo de esta mejora con fondos personales a cambio de tener acceso al techo de este cuarto que quedaría colindante a su unidad para utilizarse para área al aire libre. El Dr. Santana secundó la moción y los titulares aprobaron por unanimidad. Este Acta fue suscrita por la parte querellante como secretaria de la Junta de Directores.

5. De otra parte, el 10 de septiembre de 2020 la parte querellada celebró una asamblea extraordinaria del Consejo de Titulares del Condominio. En dicha asamblea estuvo presente Robert Robinson, Olga Castellón, Carmen Barreto y el Dr. José Santana vía proxy otorgado a Carmen Barreto. Entre los asuntos tratados en dicha asamblea, según el Acta, estaba la presentación de 4 opciones para la obra propuesta. Entre las opciones se encontraban el construir el cuarto del generador para proteger el mismo de la corrosión, incluyendo un área de balcón para los apartamentos 301 perteneciente a la presidenta, Carmen Barreto y 401 perteneciente a la querellante, de esta estar interesada en el mismo. En dicha fecha quedó pendiente concluir el proceso de votación una vez se tuviera el costo y viabilidad de una quinta opción.

6. El 21 de octubre de 2020, se llevó a cabo la continuación de la asamblea que fue comenzada el 10 de septiembre de 2020. Conforme el Acta de dicha asamblea, comparecieron la Sra. Olga Castellón, la Sra. Carmen Barreto y el Sr. Robert Robinson vía telefónica. El señor Santana no compareció ni se estableció que hubiese otorgado un proxy conforme requiere la Ley. El propósito de la asamblea era evaluar las

opciones disponibles para realizar las mejoras necesarias. Conforme a lo discutido en la asamblea del 10 de septiembre de 2020 y cumpliendo con la solicitud del Sr. Robinson de posponer el proceso de votación para incluir una quinta opción de mejoras basada en reemplazar la cubierta del generador por material de acero inoxidable.

7. Durante la asamblea, la Sra. Barreto presentó las cinco opciones con sus costos y detalles de las fuentes de fondos para cada una de las opciones. La señora Castellón emitió su voto por la opción IV. Se explicó que esta opción incluye la construcción de un cuarto que cubra el generador y que al tener impacto directo a la unidad 301, y conforme a lo acordado por unanimidad en la asamblea ordinaria del 14 de julio de 2020, contaría con fuente de fondos por parte de la unidad 301 para cubrir los costos de construcción del cuarto del generador a cambio de tener acceso al área de la azotea de ese cuarto, que quedaría inmediatamente colindante con la unidad 301.

8. La señora Barreto explicó que conforme a lo explicado en la asamblea extraordinaria del 10 de septiembre de 2020 y que, para cumplir con los requerimientos del municipio y del código del Condado, los arquitectos informaron que el diseño debe incluir un pequeño techo que pudiera utilizarse por la unidad 401. En dicha asamblea la señora Castellón expresó que ella no interesa tener acceso a esa área y que no tiene objeción alguna a que la unidad 301 utilice el área como un pequeño techo o lo que sea necesario para un diseño que cumpla con los requerimientos y que a su vez logre mitigar la zona de riesgo del generador. La señora Barreto también votó a favor de la opción IV. En el caso del señor Robinson, el Acta estableció que dado los balances en atraso de cuentas ascendentes a $2,069.00, dicho titular quedó privado de poder emitir su voto en esta asamblea. Conforme lo anterior, se estableció que se acogió la opción IV por unanimidad de los titulares hábiles para votar. El Acta fue suscrita por la parte querellante como secretaria de la Junta de Directores.

9. Como parte de los acuerdos, se estableció que el Consejo de Titulares del Condominio costearía todo lo relacionado a los planos y permisos. Los titulares beneficiados costearían la obra a realizarse. La obra comenzaría en enero de 2022.

10. Debido a su trabajo, la parte querellante estaba fuera de Puerto Rico desde marzo de 2021. De febrero de 2021 a marzo de 2022 fue la primera vez que la parte querellante pudo ver el progreso

de la obra, la cual ya se encontraba a mitad de la construcción. La parte querellante alega según su testimonio que en ese momento encontró que la obra era inmensa y que no se parecía a lo que se había aprobado. La parte querellante alegó que el vuelo del techo del balcón para el apartamento 301 fue extendido y esto le afectaba la vista de su apartamento hacia el mar.

11. La parte querellante alega que no vio los planos de la obra propuesta hasta el mes de marzo de 2022, en ocasión de venir a Puerto Rico y sostener una reunión con los arquitectos encargados de la obra. No obstante, aceptó que esa fue la primera vez que solicitó los planos de la obra y no presentó evidencia de haber requerido dichos planos con anterioridad a dicha fecha.

12. La parte querellante presentó la querella de epígrafe el 12 de julio de 2022 a través del internet. En la misma solicita que se declare nula la determinación del Consejo de Titulares lograda en la asamblea extraordinaria de 10 de septiembre de 2020 por ser un acuerdo que se requiere unanimidad. Igualmente, solicita que se ordene la demolición de la obra construida sobre elementos comunes.

   Conforme la opinión pericial presentada a través del Arquitecto José Godínez, la obra realizada cumplió con todos los permisos requeridos por las agencias concernidas y es esencialmente la misma que se aprobó por el Consejo de Titulares respecto a la fachada del condominio. Solo hubo una variación en la altura del techo del balcón del piso 3, para que llegara a la altura requerida en el reglamento.

Como cuestión de derecho concluyó:

   De un análisis de la prueba presentada, nos es forzoso concluir que la aprobación de dicha obra se hizo conforme a Derecho y no encontramos ninguna ilegalidad en la aprobación de la misma, habiendo cumplido la Junta de Directores con las obligaciones que le impone el Articulo 53 de la Ley de Condominios de cumplir y hacer cumplir las disposiciones de la Ley, el reglamento, la escritura matriz y los acuerdos del Consejo de Titulares. Sin embargo, la parte querellante meses después de la aprobación de este acuerdo, presentó la querella de epígrafe intentando impugnar la obra aprobada.

   Conforme se establece en el Acta de la asamblea, todos los titulares presentes aptos para votar, incluyendo la parte querellante, votaron a favor de dicho acuerdo avalando la selección de la opción IV. El haber votado a favor de dicho acuerdo y posteriormente acudir ante este

Departamento a impugnar el mismo, incumple con las disposiciones del Articulo 65 de la Ley de Condominios antes citado. Igualmente incumple con las disposiciones del Articulo 2 de la Ley de Condominios, respecto a no ir en contra de sus propios actos.

El DACo desestimó la querella en cuanto a la presidente de la Junta de Directores en su carácter personal. La parte recurrente solicitó la reconsideración a la resolución recurrida. Empero, el DACo dejó transcurrir el término legal dispuesto en la Ley de Procedimiento Administrativo Uniforme para disponer del asunto. Oportunamente, comparece la parte recurrente mediante el presente recurso y señala la ocurrencia de los siguientes errores:

Erró el Departamento de Asuntos al Consumidor al emitir una resolución en un caso en el cual el expediente administrativo no sustenta las conclusiones emitidas, incumpliendo con su deber de exponer clara y detalladamente los hechos y fundamentos de derecho conforme dispone la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, y el Reglamento Núm. 8430 del Departamento de Asuntos del Consumidor.

Erró el Departamento de Asuntos del Consumidor al concluir que la aprobación de la obra fue realizada conforme a derecho toda vez que esta no cumplió con el requisito de unanimidad requerido por el Artículo 45 de la Ley de Condominios.

Erró el Departamento de Asuntos del Consumidor al concluir que la obra construida era conforme a la obra aprobada por el Consejo de Titulares cuando surge claramente del expediente que la obra construida fue objeto de cambios significativos que no fueron notificados a los titulares y que requieren de una nueva aprobación por el Consejo.

Erró el Departamento de Asuntos del Consumidor al concluir que la Parte Recurrente incumplió con las disposiciones del Articulo 2 y el Articulo 65 de la Ley de Condominios toda vez que la Parte Recurrente está impugnando un acuerdo que no fue presentado para la consideración del Consejo de Titulares por ser este uno sustancialmente distinto.

Erró el Departamento de Asuntos del Consumidor por abusar de su discreción al actuar irrazonablemente por no considerar la moción sobre ofrecimiento de prueba

> presentada por la Parte Recurrente o por excluir oralmente la prueba testimonial de refutación ofrecida bajo un fundamento que no está sostenido por el expediente.
>
> Erró el Departamento de Asuntos del Consumidor al desestimar la querella contra la presidenta de la Junta de Directores, Carmen Barreto por entender que no tenía jurisdicción primaria para resolver el asunto, al aplicar las disposiciones de Articulo 23 del Reglamento Núm. 9386 sobre controversia entre titulares y obviar lo que establece el Artículo 65 de la Ley de Condominios sobre reclamaciones de titulares contra las acciones, omisiones de la Junta de Directores y el Consejo de Titulares.

La Junta de Directores también compareció mediante alegato escrito, igualmente la presidenta de la Junta de Directores. Procedemos a resolver la revisión judicial de título con el beneficio de la comparecencia de las partes, el contenido del expediente administrativo y el derecho aplicable.

*-II-*

*-A-*

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues cuentan con el conocimiento experto de los asuntos a su cargo. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019), *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Al momento de revisar una decisión administrativa, el criterio rector para los tribunales es la razonabilidad de la actuación de la agencia. *Graciani Rodríguez v. Garage Isla Verde, supra,* pág. 127; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Igualmente, los tribunales debemos ejercer un juicio independiente al resolver si una agencia actuó dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares*, 2025 TSPR 5, pág. 15. Pero principalmente, los tribunales revisores no tenemos que otorgar deferencia a la interpretación de derecho que haga una agencia simplemente porque relegar a las agencias la función de interpretar

las leyes, desafía el mandato de la LPAU pues "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Sección 4.5, LPAU, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares, supra*, págs. 14-15.

Las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. ARPE*, 167 DPR 684, 693 (2006). La revisión judicial debe limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, o en forma tan irrazonable que su actuación constituya un abuso de discreción. *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

### -B-

Una de las fuentes rectoras del régimen de propiedad horizontal es la Ley Núm. 129-2020, según enmendada, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921 *et seq*. El estatuto tiene como propósito "permitir el disfrute de un apartamiento de vivienda o unidad comercial como una unidad o propiedad individualizada, aunque el mismo sea parte, junto con otros apartamientos o unidades, de un mismo edificio o inmueble". M. J.

Godreau y M. I. Hernández Gutiérrez, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 3ra ed., San Juan, Ediciones SITUM, 2023, pág. 130. La Ley de Condominios otorga al Consejo de Titulares -- integrado por todos los titulares del condominio -- la autoridad suprema "sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal". Exposición de Motivos de la Ley de Condominios; *Pérez Riera v. Con. Tit. Cond. Marymar*, 197 DPR 197, 204 (2017). Por lo tanto, es a través del Consejo que se hace viable la administración y el funcionamiento del inmueble. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 326 (2012). Sus acuerdos son vinculantes y serán de ineludible cumplimiento por cada uno de los titulares. Artículo 48 de la Ley de Condominios, 31 LPRA sec. 1922t; *Consejo de Titulares v. Ramos Vázquez, supra*, pág. 326. Esta visión responde a que el Consejo es "el órgano supremo de la propiedad horizontal, a través del cual se manifiesta la voluntad de los propietarios singulares y en el que radican las fa[c]ultades rectoras de este régimen jurídico, para el mejor logro de los intereses comunes". *Álvarez Figueredo v. González Lamela*, 134 DPR 374, 382 (1993); M. Fernández Martín Granizo, *La Ley de Propiedad Horizontal en el Derecho español*, Madrid, Ed. Edersa, 1983, pág. 908; Véase, además, *Cond. Prof. S.J. H. Centre v. P.R.F., Inc.*, 133 DPR 488 (1993). De conformidad con el Artículo 49 de la Ley de Condominios, 31 LPRA sec. 1922u, corresponde al Consejo aprobar la ejecución de obras extraordinarias y mejoras y recabar los fondos para su realización. Asimismo, es al Consejo de Titulares a quien le corresponde tomar aquellas decisiones sobre asuntos de interés general para la comunidad.

La Ley de Condominios está enmarcada por un principio de gobernanza que permite la participación de los condóminos en los asuntos que afecten a la comunidad. Godreau y Hernández Gutiérrez, *op. cit.*, pág. 237. Cada uno de los titulares tendrá derecho

al voto durante las deliberaciones del Consejo, independientemente del número de apartamentos que sean propietarios. Artículo 51 de la Ley de Condominios, 31 LPRA sec. 1922w. La asistencia a las asambleas puede ser personal o por representación legal o voluntaria. *Íd.* El Artículo 65 de la Ley de Condominios, 31 LPRA sec. 1923j, permite a un titular cuestionar legalmente las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, o los acuerdos del Consejo de Titulares en los siguientes supuestos:

> a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;
>
> b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;
>
> c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.

El Artículo 65 de la Ley de Condominios, *supra*, requiere del titular quejoso demostrar su presencia y participación mediante voto, en la asamblea de condóminos de la cual surgió el acuerdo. M. García Cárdenas, *Propiedad Horizontal: Ley de Condominios 2020*, San Juan, MJ Editores, 2023, págs. 195-196. Conforme al Artículo 66 de la Ley de Condominios, 31 LPRA sec. 1923k, el DACo promulgó el Reglamento de Condominios, Reglamento Núm. 9386 de 6 de junio de 2022. La Regla 23 del Reglamento de Condominios establece que:

> I. Las acciones u omisiones de la Junta de Directores, Administrador Interino, Agente Administrador, Síndico, así como los acuerdos del Consejo de Titulares podrán ser impugnados ante el Departamento por los titulares en los siguientes supuestos:
>
> (a) Cuando sean contrarios a la Ley de Condominios de Puerto Rico, la escritura matriz, el reglamento del condominio y a este Reglamento.
>
> (b) Cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular.

(c) Cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.

El Agente Administrador será responsable por cualquier determinación, actuación u omisión del Asistente Administrador.

II. El Departamento no tendrá jurisdicción para adjudicar querellas que surjan en condominios de uso exclusivamente comercial o profesional. En estos casos la jurisdicción corresponderá al Tribunal de Primera Instancia. Igualmente quedarán excluidas de la jurisdicción del DACO, las querellas entre titulares o cuando el Consejo de Titulares, el Director o la Junta de Directores presente una reclamación contra uno o varios titulares o residentes del condominio. La jurisdicción para ventilar estas acciones corresponderá al Tribunal de Primera Instancia.

### *-III-*

### *-A-*

Por vía de los primeros cuatro errores la parte recurrente cuestiona la validez legal, desde el punto de vista de la Ley de Condominios, del procedimiento llevado por la Junta de Directores para la aprobación por los condóminos de la nueva construcción erigida para salvaguardar el generador electrónico del condominio. En específico, asevera la falta del consenso requerido por la Ley de Condominio sobre el diseño final de la construcción pues entre el primer concepto y la construcción final existe una diferencia en dimensiones. Esta diferencia, según la recurrente, debió ser considerada en una asamblea extraordinaria sujeta al voto final de los titulares. Entonces, según la recurrente, la ilegalidad de la construcción final estriba en la falta del voto final sobre la diferencia en el diseño aprobado inicialmente y el diseño final utilizado para la construcción. En palabras de la parte recurrente "[p]rocedía convocar una reunión extraordinaria para la aprobación del diseño final".

El expediente administrativo y la transcripción de la prueba oral verifica como incontrovertido que el Condominio Ocean One quedó sometido al régimen de propiedad horizontal mediante la escritura pública número 9 del 8 de mayo de 2006 y consta de seis apartamentos residenciales. El 14 de julio de 2020, el Consejo de Titulares celebró una asamblea extraordinaria. En aquella fecha el condominio constaba de cuatro titulares. Conforme al acta de la asamblea del 14 de julio de 2020, comparecieron tres titulares: (1) el doctor José Santana, (2) la presidenta de la Junta de Directores; y (3) la parte recurrente. En la reunión los titulares votaron de forma unánime cotizar la construcción de un cuarto de planta eléctrica. Esto con el propósito de mantener la máquina bajo techo, evitar corrosión y poseer un dique contra derrames de diésel. La presidenta del consejo de titulares ofreció cubrir el costo de la mejora a cambio del uso del vuelo de la estructura. Los condóminos presentes votaron a favor de la mejora.

El 10 de septiembre de 2020 el condominio celebró una segunda asamblea extraordinaria. Todos los titulares del condómino asistieron a la reunión: (1) el doctor José Santana, (2) la presidenta de la Junta de Directores; (3) la parte recurrente; y (4) el señor Roberto Robinson Meléndez. La presidenta, según acordado en la reunión previa, presentó cuatro cotizaciones para la construcción de la mejora acordada en la asamblea del 14 de julio de 2020. La asamblea culminó, pero quedó pendiente la selección de una quinta cotización y la selección de una de las cotizaciones. El 21 de octubre de 2020 el condominio celebró una tercera reunión. La parte recurrente compareció, también la presidenta de la junta y el señor Robinson, dueño de tres apartamentos. El señor Robinson tenía el *proxy* del doctor Santana. En la asamblea, la presidenta presentó cinco cotizaciones. Según el acta de la reunión las opciones presentadas fueron:

- Opción I con costo total de $85,000 a ser cubiertos $25,000 por el Consejo, $49,811, por la unidad 301 y $10,189 por la unidad 401.

- Opción II con costo total de $75,000 a ser cubiertos $25,000 por el Consejo y $50,000 por la unidad 301.

- Opción III con costo total de $73,000 a ser cubiertos $13,000 por el Consejo y $49,811 por la unidad 301 y $10,189 por la unidad 401.

- Opción IV con costo total de $63,000 a ser cubiertos $13,000 por el Consejo y $50,000 por la unidad 301.

- Opción V con un costo estimado de $30,000 a ser cubiertos en su totalidad por el Consejo.

La recurrente votó por la opción número cuatro, igualmente la presidenta de la Junta. El señor Robinson no pudo votar debido a un atraso en el pago de su cuota en la participación de los elementos comunes del condominio. El proxy del doctor Santana quedó invalidado por la deuda del señor Robinson. Los titulares con derecho a voto seleccionaron la opción número cuatro. Conforme a la opción elegida, la titular del apartamento 301 cubriría el costo de la construcción y el resto el precio del proceso de permisos y planos. La opción cuatro otorgó a la titular del apartamento 301 el uso exclusivo de la azotea y el vuelo del cuarto del generador.

El proyecto de construcción fue presentado ante la Oficina de Permisos del Municipio de San Juan. El municipio solicitó un cambio al diseño original escogido por el condominio en la asamblea del 21 de octubre de 2020. El cambio requerido conllevó alterar la altura al techo del balcón propuesto para el apartamento 301. La modificación fue realizada al plano y el permiso de construcción fue aprobado. La nueva obra fue concluida según el plano modificado. Empero, la parte recurrente aduce ilegalidad en el procedimiento debido a que, según su postulado, la Junta debió celebrar una nueva asamblea extraordinaria para decidir a favor o en contra del

diseño modificado. Sobre esto último tampoco existe controversia, el plano modificado no fue presentado a votación, más bien, la construcción fue culminada con la aprobación unánime de la opción número cuatro según presentada a los dueños de los apartamentos en las asambleas extraordinarias del 10 de septiembre de 2020 y 21 de octubre de 2020.

No obstante, una simple lectura del acuerdo alcanzado en aquellas asambleas demuestra que la Junta de Directores no tenía tal obligación. La Junta de Directores no quedó obligada a presentar nuevamente el proyecto a votación debido a la exigencia de algún cambio solicitado por ministerio o agencia. Transcribimos *inextenso* el acuerdo alcanzado:

> La Sra. Barreto recordó a los presentes que, tal cual notificado en la convocatoria y conforme a derecho según lo estipulado en la Ley de Condominios podrá votar todo titular presente en la asamblea de forma física o virtual y que no tenga atrasos en su cuenta mayores de 60 días. También podrá votar todo titular que no esté presente, que no tenga atrasos en su cuenta mayores de 60 días y, que haya otorgado un proxy firmado a un inquilino, un familiar, o a un titular que no tenga atrasos en su cuenta mayores de 60 días.
>
> Se compartió con todos los presentes el más reciente informe de cuentas por cobrar "Receivables Aged Report" previamente distribuido por la Administración a todos los titulares vía correo electrónico el día 3 de octubre de 2020 con los balances adeudados, si alguno, por cada titular al 30 de septiembre de 2020. Copia del envío del correo electrónico se incluye como anejo a este Acta.
>
> Ejerciendo su derecho al voto y constando no tener balance alguno en atraso, la Sra. Castellón emitió su voto por la opción número IV y se discutió entre los presentes que tal cual detallado en la guía de la asamblea compartida y previamente explicada, esta opción incluye la construcción de un cuarto que cubra el generador y que al tener impacto directo a la unidad 301, y conforme a lo acordado por unanimidad en la asamblea ordinaria del 14 de junio de 2020, contaría con fuente de fondo por parte de la unidad 301. La opción ofrece una solución duradera al menor costo para el Consejo de Titulares. La opción ofrece una

solución duradera al menor costo para el Consejo de Titulares. La Sra. Barreto explicó que conforme a lo explicado en la asamblea extraordinaria del 10 de septiembre y que, para cumplir con los requerimientos del municipio y del código de Condado, los arquitectos informaron que el diseño debe incluir un pequeño techo que pudiera utilizarse por la unidad 401. **La Sra. Castellón expresó que ella no interesa tener acceso a esa área y que no tiene objeción alguna en que la unidad 301 utilice el área como un pequeño techo _o lo que sea necesario para un diseño que cumpla con los requerimientos y que a su vez logre mitigar la zona de riesgo del generador_**. La Sra. Barreto compartió que, los arquitectos e ingenieros estructurales evaluaron los planos originales del condominio, inspeccionaron físicamente el área del generador, y en su propuesta explicaron que la construcción se puede hacer de forma segura utilizando materiales livianos que logren la protección deseada para mitigar la zona de riesgo a la vez que mantenga el concepto del diseño original del condominio. Ejemplo de un concepto preliminar se compartió en la guía de la asamblea distribuidos a los presentes la cual también es incluida como anejo a este Acta.

**Ejerciendo su derecho al voto y constando no tener balance alguno en atraso, la Sra. Barreto también emito su voto por la opción número IV**.

En el caso del derecho al voto del Sr. Robinson, dado los balances en atraso en sus cuentas ascendientes a $2,069.00, este titular queda privado de poder emitir su voto en esta asamblea. De todas formas, el Sr. Robinson expresó su objeción a la determinación de la Junta a negar su voto y consignó su intención de pagar el atraso en su cuenta en ese momento. La Junta denegó su petición por entender que se encuentra a destiempo e improcedente. Este solicitó consignar su intención de votar por la opción V. La Sra. Barreto procedió a informarle que la Ley de Condominio vigente provee los detalles para la situación presente y los remedios correspondientes que el (los) titula(es) tienen al amparo de la misma.

**Se concluye que, de los titulares con derecho al voto, sin deudas en atraso, y presentes en la asamblea, la opción número IV obtiene voto por unanimidad**. [Énfasis nuestro.]

Al igual que todo contrato, los acuerdos suscitados en una reunión de titulares constituye la ley entre las partes. El Consejo de Titulares del Condominio Ocean One puede establecer en sus

acuerdos comunales aquellas cláusulas y condiciones convenientes conforme a los principios del sistema de horizontalidad al cual está sometido su hogar. Art. 1207 del Código Civil de 1930, 31 LPRA sec. 3372, *Bravman, González v. Consejo Titulares*, 183 DPR 827, 844 (2011). De ahí que, al igual que cualquier otro acuerdo lícito, aplica el principio *Pacta Sunt Servanda*. Art. 1044 del Código Civil de 1930, 31 LPRA sec. 2994[2]; BPPR v. Sucn. Talavera, 174 DPR 686, 693 (2008). "Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Artículo 1233 Código Civil de 1930, 31 LPRA sec. 3451.

En el presente caso el acuerdo entre los condóminos fue la construcción de un cuarto donde depositar el generador eléctrico del condominio. Conforme la opción elegida la titular del apartamento 301 obtuvo el uso exclusivo de la azotea y vuelo del techo del nuevo espacio para la construcción de un pequeño techo. Según el texto del acuerdo, la parte recurrente votó a favor de todo lo anterior y, además, dispuso "***o lo que sea necesario para un diseño que cumpla con los requerimientos***". Así cuando el diseño elegido fue presentado ante las autoridades gubernamentales competentes estas solicitaron un cambio al plano como condición previa al permiso de construcción. El condominio cumplió, ajustó el diseño para cumplir con el requerimiento del municipio. La parte recurrente autorizó tal actuación con su voto.

Las palabras del acuerdo según transcritas en el acta por la propia parte recurrente son claras, contienen el sentido único antes explicado y no dan pie a alguna controversia, "ni diversidad de interpretaciones" no es necesario "para su comprensión

---

[2] Hacemos referencia al Código Civil de 1930, derogado, debido a que la controversia surgió durante su vigencia. Véase el Artículo 1808 del Código Civil de 2020, 31 LPRA sec. 11713.

razonamientos o demostraciones susceptibles de impugnación". *SLG Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009). Por tanto, el acuerdo antes colegido es vinculante para cada uno de los titulares del Condominio Ocean One. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 326 (2012). Los "acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio". Artículo 48, Ley de Condominios, 31 LPRA sec. 1922t.

La Ley de Condominios específicamente prohíbe el comportamiento caprichoso de la parte recurrente. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 325 (2012). Como podemos apreciar, la Ley de Condominios asigna responsabilidades a todos los componentes del régimen de propiedad horizontal, entiéndase titulares, Consejo de Titulares y su Junta. En ese sentido, exige obrar según los principios de buena fe y equidad, ya sea en el quehacer administrativo o privado y no conforme al capricho temerario demostrado por la recurrente desde la presentación de la querella. *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 325 (2012); *Consejo Titulares v. Ramos Vázquez*, 186 DPR 311, 327 (2012). Por tal razón y al aplicar los principios de convivencia reseñados al régimen, en atención a la clara palabra suscrita en el acuerdo suscitado entre los dueños el condominio, concluimos que, los primeros cinco errores no fueron cometidos. El DACo actuó conforme a derecho, la resolución recurrida está sostenida por evidencia sustancia que obra en el expediente. Sección 4.5 de la LPAU, 3 LPRA sec. 9675.

*-B-*

En el quinto error la parte recurrente cuestiona la razonabilidad de la decisión del juez administrador de denegar su petición de enmendar las alegaciones de la querella mediante la

presentación de prueba para demostrar que las asambleas celebradas fueron todas nulas por notificación defectuosa a los dueños de los apartamentos. Agrega, que el propósito de la prueba es refutar, contradecir e impugnar el testimonio de la presidenta de la Junta de Directores en relación con (i) la supuesta morosidad del señor Robinson; (2) la legitimidad de la votación que aprobó los cambios sustanciales en la fachada del Condominio Ocean One; y (3) la nulidad de la votación en las asambleas del 14 de julio de 2020, 10 de septiembre de 2020, y 21 de octubre de 2020.

Según expone la recurrente, los apartamentos del señor Robinson son en realidad propiedad de "Robinson Holdings, Inc.". En consecuencia, concluye la ocurrencia de nulidad sobre todas las convocatorias de las asambleas celebradas. Una simple búsqueda en el registro de corporaciones local señala al señor Robinson como el agente residente de la entidad Robinson Holdings, Corp. No existe controversia en torno a la notificación de las convocatorias que fueron recibidas por el señor Robinson. Por tanto, las convocatorias fueron notificadas correctamente como demuestra la comparecencia del señor Robinson a dos de las tres reuniones de titulares donde fue decidido la ejecución de la mejora y el cambio de fachada. Véase, Artículo 12.01, Ley General de Corporaciones de 2009, Ley Núm. 164-2009, 14 LPRA sec. 3781; Articulo 50, Ley de Condominios, 31 LPRA sec. 1922v. Inclusive, y en vista de la supuesta titularidad corporativa de los apartamentos del señor Robinson, este debió acreditar su capacidad de representación sobre la corporación de la cual es agente residente mediante una autorización corporativa. Sobre el particular el Artículo 51 de la Ley de Condominios, 31 LPRA sec. 1922w, dispone:

> Cuando uno (1) o más apartamentos pertenecieren a una persona jurídica, ésta designará, mediante resolución corporativa, a la persona que la representará para que asista a las asambleas y ejercite el derecho al voto que le

corresponda. En ausencia de la resolución corporativa no podrá registrarse el voto de ese apartamento en las decisiones del Consejo de Titulares. La resolución corporativa que acredite la representatividad, tiene que ser entregada, por lo menos, veinticuatro (24) horas antes de la fecha de la asamblea.

No encontramos tales constancias en el expediente administrativo. Agregue que, de la propia prueba anejada por la parte recurrente a su "Moción Sobre Ofrecimiento de Prueba", surge que el señor Robinson o Robinson Holdings, Corp., a la fecha de la elección de la opción número cuatro mantenía una deuda de sobre tres meses por impago a las cuotas de mantenimiento del condominio. Entonces, la frivolidad del argumento de la recurrente estriba en su aseveración sobre que, el testimonio del señor Robinson declararía bajo juramento "[q]ue personalmente no adeudaba tres (3) o más cuotas de mantenimiento... ya que esta deuda correspondía a un ente jurídico". Pero sobre las bases de su propio argumento, el señor Robinson no podía participar personalmente en las asambleas pues correspondía tal deber al representante nombrado por la corporación comparecer a nombre de esta, y ejercer el derecho al voto que pertenece a Robinson Holding, Corp., esto en ausencia de la deuda acreditada por la propia recurrente. También, la deuda de la corporación tornó inservible el *proxy* poseído por el señor Robinson para ejercer el voto a nombre del doctor Santana porque "[l]a representación en las asambleas del Consejo de Titulares en los que exista por lo menos un apartamento dedicado a vivienda, **la podrán ejercer solamente personas mayores de edad que, a su vez, sean titulares que no adeuden tres (3) o más cuotas de mantenimiento**[.]" Artículo 51, Ley de Condominios, *supra*. Inclusive, el señor Robinson estaba incapacitado de representar al doctor Santana en aquella reunión, también estaba incapacitado de comparecer a nombre de Robinson Holdings, Corp. por falta de resolución corporativa y en todo caso la

corporación estaba impedida de ejercer su voto por incumplir por más de tres meses con el pago de la cuotas de mantenimiento.

En torno la votación final en la asamblea del 21 de octubre de 2020 remitimos al lector al Artículo 52, Ley de Condominios, 31 LPRA sec. 1922x:

> Los acuerdos del Consejo de Titulares se someterán a las siguientes normas:
>
> (a) … .
>
> (b) La mayoría requerida reglamentariamente para la adopción de acuerdos se computará tomando como cien por ciento (100%) el número de titulares presentes o representados al momento de votarse por el acuerdo, excepto en aquellos casos en que se requiera unanimidad o del voto de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes, en cuyo caso, se requerirá dar cumplimiento con las disposiciones del inciso (c), siguiente.
>
> c. …

Por tanto, vistos los antecedentes fácticos y jurídicos antes colegidos las únicas titulares con derecho al voto en la asamblea del 21 de octubre de 2020 fueron las dueñas de los apartamentos 301 y 401. Ambas eligieron la opción número cuatro de las propuestas en aquella reunión. El voto obtenido superó el crisol mínimo de dos tercios requeridos para el cambio de fachada, la nueva construcción, la transferencia del uso de la nueva azotea y el vuelo (derecho de sobreelevación) de la nueva construcción a la titular de apartamento 301. Véase, Artículos 17, 39, 45 y 52, Ley de Condominios, 31 LPRA secs. 1921p, 1922k, 1922q, y 31 L.P.R.A. § 1922x. En conclusión, el error número cinco no fue cometido, todos los acuerdos alcanzados por los titulares de los apartamentos del Condominio Ocean One fueron adoptados en asambleas debidamente convocadas y constituidas, dentro de los límites establecidos en la Ley de Condominios.

**-C-**

En relación con el sexto error basta señalar la jurisdicción atribuida al DACo sobre controversias entre titulares de un edificio sometido al régimen de horizontalidad. En JJJ *Adventure, LLC v. Consejo de Titulares del Condominio Adaligia,* 2025 TSPR 123, el Tribunal Supremo concluyó que la Asamblea Legislativa confirió jurisdicción primaria exclusiva al DACo "únicamente para atender las querellas presentadas por los titulares de condominios residenciales en contra de la Junta de Directores, el Agente Administrador o el Consejo de Titulares, según lo dispuesto por la Ley." Véase, Artículo 65 de la Ley de Condominios, 31 LPRA sec. 1923j. Por tanto, el DACo no tiene jurisdicción para entrar en los méritos de la reclamación de daños en contra de la presidenta de la Junta en su carácter personal. Actuó correctamente al desestimar tal reclamación. El sexto error no fue cometido.

**-IV-**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, *confirmamos* la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones